THE BALTIMORE AND OHIO SOUTHWESTERN RAILWAY COMPANY *v.* PETERSON, ADMINISTRATRIX OF THE ESTATE OF PETERSON, DECEASED.

[No. 18,982.   Filed March 26, 1901.]

MUNICIPAL CORPORATIONS.—*Validity of Ordinance Regulating the Manner or Running Cars in Railroad Yards.*—Under Subd. 42, §3106 R. S. 1881, a city is empowered to regulate by ordinance the manner of handling, operating or running locomotive engines and cars in and through the yards of a railroad company which are situated within such city. *pp. 366-371.*

RAILROADS.—*Failure to Comply with City Ordinance.—Negligence.*— The failure of a railroad company to discharge its duty in regard to the maintenance of a watchman on the rear of a backing train, and the ringing of the engine bell, as provided by a city ordinance, is negligence *per se.* *p. 372.*

SAME.—*Duty of Employes to Look and Listen for Approaching Trains Not Same as Others.*—The rule which exacts of a traveler or other person about to cross a railroad track the caution to look in both directions, and also to listen, in order to ascertain if a train is approaching, is not applied in all its strictness to workmen engaged in the line of their duty, and the failure of an employe, while in the discharge of his duties, to look and listen for approaching trains may or may not be negligence under the particular circumstances of the case. *p. 373.*

SAME.—*Violation of City Ordinance.—Employe's Assumption of Risk.* —One who accepts employment with a railroad company does not accept the risk or hazard which might result from a non-observance of a city ordinance providing as to the manner of running cars within the city limits. *p. 374.*

From the Daviess Circuit Court.   *Affirmed.*

*W. R. Gardiner, C. G. Gardiner* and *E. W. Strong,* for appellant.

*C. K. Tharp,* for appellee.

JORDAN, J.—Appellee as the administratrix of Frank Peterson, her deceased husband, instituted this action to recover damages on account of his alleged negligent killing by appellant. A trial in the lower court before a jury resulted in a verdict being awarded her for $1,500, and over appellant's motion for a new trial judgment was rendered for this amount. Appellant under its assignment of errors contends: (1) That the second paragraph of the complaint upon which, as the record discloses and the parties concede, the judgment in question is based, is insufficient on demurrer; (2) that the court erred in giving and refusing certain instructions, and (3) that the evidence is not sufficient to support the judgment. Among other material matters, the second paragraph of the complaint sets out the following facts: Appellee's decedent on and prior to January 18, 1897, was an employe of the appellant, the railway company, whose railroad runs through the city of Washington, Daviess county, Indiana, in which city said railroad company owns and operates in connection with its railroad a switch yard. On said 18th day of January, and for some years prior thereto, an ordinance adopted by the common council of said city of Washington was in full force and effect. Two of its sections, five and ten, which have a bearing on the things alleged in the complaint, are set out and embodied therein and are as follows: "Section 5. That it shall be the duty of every locomotive engineer, conductor, or other person or persons engaged in running any locomotive within said city to ring the bell attached to such locomotive whenever the same shall be moving in or through said city or any part thereof. Section 10. No locomotive engineer, conductor, or other person managing or controlling any locomotive engine, car or cars, or train of cars,

shall run or cause to be run any locomotive engine, car or cars, or train of cars backward in or through said city, or any part thereof, without providing for a watchman, or other person, on the rear end of such train, and if at night, such watchman shall have and carry a good, bright light, in order to avoid accidents." On the aforesaid date it is charged that said decedent, then in the service of appellant, was engaged in the line of his duty as such servant in repairing and cleaning one of the railroad tracks located in and connected with appellant's said switch yard. That while performing said work, and while his attention was fixed thereon and engrossed therein, appellant and its employes in charge of an engine and freight cars, and engaged in running and operating the same in said switch yard, carelessly and negligently pushed and kicked said freight cars backward on the railroad track where the decedent was at the time engaged in his work, whereby he was run over and injured by said cars, from the effects of which he died. It is further charged that said cars were negligently pushed and run onto said track by appellant and its servants, without giving said decedent any notice of their approach, and without ringing the engine bell attached to said engine, and without having a watchman at the time on the rear of such train of cars to control them and to give said decedent warning of their approach. It is further alleged, by reason of his attention being so fixed upon his work and engrossed therein, that he did not see said cars approaching, nor did he have any notice or knowledge of their approach at the time of said accident. Absence of contributory negligence upon the part of said decedent is also expressly shown. The validity of the ordinance in question is assailed, hence the jurisdiction of this appeal is lodged in this court.

Counsel for appellant contend that the complaint is predicated upon the theory that at the time appellee's decedent sustained the fatal injury by being run over as alleged, that appellant was handling its cars in violation of the provi-

sions of the ordinance mentioned and set out in the plead-
ing. It is further contended, that under the averments of
the complaint the switch yard where the accident occurred,
while within the limits of the city of Washington, is clearly
shown to be the private property of appellant, and that,
therefore, so far as the ordinance in question attempts to
control the operation or running of cars in said yard it is
unreasonable and invalid.. Counsel contend that while the
public has an interest or concern in the manner in which
cars are run through the city where there are many street
crossings, still such interest or concern does not extend to
the private grounds of the railroad company, and that
under the alleged facts appellee's intestate as the servant
of appellant did not come within the protection of this ordi-
nance, for the reason that the latter can not to this extent be
sustained as a reasonable exercise of the power of the com-
mon council. Section 3541 Burns 1894, subd. 42, §3106
R. S. 1881 and Horner 1897, relating to the powers of
common councils of cities, organized under the general laws
of this State, reads as follows: "To regulate the speed of
railroad trains through the city; and also provide, by ordi-
nance, for security of citizens and others from the running
of trains through any city, and to require railroad corpora-
tions to observe the same; and also to require such corpora-
tions to keep clean the gutters and crossings of the streets
along which their railways pass."

The contention is further advanced that the common
council of a city under this provision of the statute is lim-
ited to the regulation of trains running through such city,
and is not empowered to regulate the manner of handling
or operating or running locomotive engines and cars in or
through the yards of a railroad company, and that any
attempt to exercise such power, it is claimed, will be invalid.
The complaint discloses that the switch yard in question is
situated within the limits of the city of Washington, and is
used by appellant in connection with the operation of its

railroad. It is true that the complaint does not fully disclose to what extent, if any, the public in general was invited or permitted by the company to pass over or through its switch yard. That a city, under the laws of this State, has the power to regulate the operation of locomotive engines and railway cars within its limits, has been repeatedly recognized and upheld by the decisions of this court. *Cincinnati, etc., R. Co.* v. *Long,* 112 Ind. 166; *Pennsylvania Co.* v. *Stegemeier,* 118 Ind. 305, 10 Am. St. 136; *Pittsburgh, etc., R. Co.* v. *Moore, Adm.,* 152 Ind. 345.

Such ordinance, when authorized to be adopted by a municipal corporation, has the force and effect of a statute enacted by the legislature. *Swindell* v. *State,* 143 Ind. 153, 35 L. R. A. 50, and cases cited.

In the appeal of *Cincinnati, etc., R. Co.* v. *Long, supra,* the fatal accident was charged to be due to the negligence of the railway company, through its servants, in backing a locomotive engine and certain cars under their control, over and upon the deceased who was engaged in switching cars at the Union Switch Yards in the city of Indianapolis. The complaint in that case charged that the railroad company backed the engine and cars in question without giving deceased warning of their approach and in violation of the provisions of an ordinance adopted by that city. The sections of the ordinance involved in that appeal were substantially the same as those now in question. By the ordinance in that case it was made the duty of every engineer, conductor, or other person running a locomotive engine, to ring the bell attached thereto whenever such engine should be moving through the city. It was also made unlawful to run any locomotive or train of cars backward in or through the city, without having a watchman on the rear end of the train, in order to avoid accidents. This court, per Mitchell, J., in that appeal said: "The appellant owed the duty of operating its train in careful compliance with the city ordinance, and with a due regard for the safety of all those

who were in the exercise of corresponding rights or duties upon the tracks and grounds of the Union Company, or of those who might be found on the company's tracks and grounds. * * * When the appellant had properly manned its train, and stationed a watchman on the rear car, its employes were justified in assuming, while backing at a rate of speed less than four miles an hour and ringing the bell continuously, that all persons who had arrived at years of discretion, and who were in a situation to see the train, and who were not so engaged as to render them oblivious to its approach, would avoid contact with the cars."

. In *Pittsburgh, etc., R. Co.* v. *Moore, Adm.,* 152 Ind. 345, the action was based upon the fourth clause of the employers' liability act, §7083 Burns 1894. This section provides that every railroad corporation, "operating in this State, shall be liable for damages for personal injury suffered by any employe while in its services, the employe so injured being in the exercise of due care and diligence, in the following cases: * * * Fourth. Where such injury was caused by the negligence of any person in the service of such corporation who has charge of any * * * locomotive engine or train upon a railway." The fatal injury in that case was sustained by the deceased servant while engaged in the line of his duty in the yards of the railroad company situated in the city of Logansport, and was charged to be due to the operation by appellant's employes of a locomotive engine and cars in violation of an ordinance of said city. In considering the question relative to the force and effect of the ordinance involved in that case, this court said: "A disregard of the ordinance, under §7083 Burns 1894, will extend to the engineer in the employ of appellant and in charge and management of its locomotive and train; and if said ordinance was disobeyed by said engineer, as averred, the jury would have the right to impute such disobedience as negligence. [Citing authorities.] It will not do to say,

as appellant contends, that the deceased, being in the service of the company, and familiar with the needs of the service, in running trains backward and forward through the yards, and sometimes at a great rate of speed, was not entitled to the protection afforded by the ordinance. The power of a city to pass such an ordinance is conferred as a police power for the protection of the public, and all the public; and because the deceased happened to be in the service of the company, within the inhibited territory, presents no reason for depriving him of its protection. [Citing authorities.] It follows, therefore, that the jury had the right to find, if the evidence warranted, that obedience to the city ordinances was a duty owing by appellant to the deceased, and its violation was not an assumed risk, but negligence of appellant." This case may be said to decide the questions presented by appellant in respect to the provisions of the ordinance in controversy adversely to the contentions of its counsel.

Appellant's counsel argue that if the ordinance in dispute is held to apply to the operation or movement of trains upon tracks situated within switch yards, that it will have the effect to regulate the relation of master and servant. We are not impressed with this contention. The ordinance was not especially intended for the protection of railway employes, but for the protection of the public in general, or at least for all persons who may have occasion to be upon or pass over the tracks of a railroad company, without regard as to whether such tracks were situated at or near street crossings, or in and upon the switch yards of such company, which were open to or accessible to the public. The fact that the tracks of the railroad company used by it in the operation of its road may be situated on its own property will not alone be sufficient to relieve the company of obedience to the requirements of reasonable police regulations. A railroad company is considered and deemed to hold its property and franchise subject to reasonable police regulations, prescribing the manner in which such property and

franchise may be used, so as not to injure others, and in this respect a railroad company, in the eye of the law, stands in no different or better position than an individual.   Tiedeman's Lim. of Police Power, §194; *Ohio, etc., R. Co. v. McClelland*, 25 Ill. 123.   The ordinance, as we have said, was intended as a safeguard to the lives and property of persons.   It was a law to which the railroad company and its servants both owed obedience.   Because such servants while engaged at work in the line of their duty in the company's yards or upon its tracks elsewhere within the city were either directly or incidentally protected by the requirements of the ordinance, affords no ground for assailing its validity.   The railroad company's employes, by entering its service, did not by such act deprive themselves of the protection which the laws or regulations of the city afforded to all persons within its limits.   We conclude, and so hold, that the provisions of the ordinance involved are valid, and that they were as applicable to appellant's switch yard as to other places within the city.   In so holding we are supported by the following authorities: *Whitson v. City of Franklin,* 34 Ind. 392; *Pittsburgh, etc., R. Co. v. Moore,* 152 Ind. 345; *Merz v. Missouri, etc., R. Co.,* 88 Mo, 672; *Bergman v. St. Louis, etc., R. Co.,* 88 Mo. 678; *Grube v. Missouri, etc., R. Co.,* 98 Mo. 330, 11 S. W. 736, 4 L. R. A. 776; *Bluedorn v. Missouri, etc., R. Co.,* 108 Mo. 439, 18 S. W. 1103; *Crowley v. Burlington, etc., R. Co.,* 65 Iowa 658, 20 N. W. 467, 22 N. W. 918; *Missouri, etc., R. Co. v. McGlamory* (Texas Civ. App.), 34 S. W. 359.   In this latter case it is held that an ordinance of a city authorized by its charter to direct the use and regulate the speed of locomotive engines within the city, requiring a bell to be rung on an engine at all times while in motion, is valid, and applies to the private switch yard of a railway company, situated within the city.

As previously said, the complaint does not fully disclose the extent to which the switch yard in controversy is open to

the public, but this fact is fully shown by the evidence, which establishes that the yard is not only accessible to the employes of appellant, but is also open to the public, and that the latter are, impliedly at least, invited to come to this yard and take passage upon freight trains upon which passengers are permitted to ride. The failure upon the part of appellant and its servants in charge of the engine and train at the time of the accident to observe or comply with the requirements of the ordinance in question was negligence *per se,* for the rule is well settled that the doing of a prohibited act, or failure to discharge a duty enjoined by a statute or municipal ordinance, constitutes negligence *per se,* for which the guilty party is liable for an injury shown to have resulted therefrom, unless excused by the contributory negligence of the injured party. *Baltimore, etc., R. Co., v. Young,* 146 Ind. 374; *Baltimore, etc., R. Co. v. Conoyer,* 149 Ind. 524; *Pittsburgh, etc., R. Co. v. Moore,* 152 Ind. 345; *St. Louis, etc., R. Co. v. Mathias,* 50 Ind. 65; *Pennsylvania Co. v. Stegemeier,* 118 Ind. 305; *Tobey v. Burlington, etc., R. Co.,* 94 Iowa 256, 62 N. W. 761, 33 L. R. A. 496.

It is insisted that in the event it should be held that the facts alleged show that appellant was guilty of negligence in its failure to obey the ordinance, still the facts are not sufficient, it is contended, to show that such negligence was the proximate cause of the injury of which the plaintiff complains. The alleged facts, it is said, are insufficient to show conclusively that had the engine bell been rung appellee's decedent would have heard it, or had a watchman been upon the rear car when the train was running backward into the switch yard he would have been able to raise his voice above the noise of the cars and thereby have given warning of its approach. By the express averments of the complaint the injury sustained by the decedent is directly charged to be due to the alleged negligence of appellant and its servants in a failure to comply with the requirements of the ordi-

nance.   Under the positive averments of the complaint, there is no escape from the conclusion that the accident in question must be attributed to the negligence of appellant's servants in charge of the train, in failing to obey what the ordinance exacted.   It follows, and we so conclude, that the complaint is sufficient on demurrer.

Counsel next contend that appellee's intestate was guilty of contributory negligence for not being on the constant alert or lookout for the approach of a train, and also because he wore a cap at the time of the accident in such a manner as to prevent him from hearing the approaching train.   The question in regard to contributory negligence was, under all the circumstances in the case, properly submitted to the jury, and there is evidence to justify the jurors in finding, as they did, that the deceased was not guilty of such negligence.   The rule which exacts of a traveler or other person about to cross a railroad track the caution to look in both directions, and also to listen in order to ascertain if a train is approaching, is not applied in all its strictness to workmen engaged in the line of their duty at work upon a railroad track.   In the case of *Ominger* v. *New York, etc., R. Co.,* 4 Hun 159, the court speaking in reference to the exception to the general rule said:   "As to travelers about to cross a track, it is held negligence, as matter of law, not to look in both directions, in order to see whether, at that time, a train is approaching.   But it is hardly possible to apply that rule; in its strictness, to a workman engaged on the track.   The traveler looks once, and crosses; the workman remains.   If it is the workman's duty, as a matter of law, to look in both directions, he must do this as often as it is possible for a train to come in sight.   * * *   Such an obligation would be inconsistent with his proper attention to his work. I do not think, therefore, that the rule which has been applied to travelers crossing the track, is applicable to workmen whose employment requires them to remain on or about it."   The same exception is recognized and approved in the

following cases: *Noonan* v. *New York, etc., R. Co.,* 16 N. Y. Supp. 678; *Crowley* v. *Burlington, etc., R. Co.,* 65 Iowa 658, 20 N. W. 467, 22 N. W. 918; *Goodfellow* v. *Boston, etc., R. Co.,* 106 Mass. 461; *Jordan* v. *Chicago, etc., R. Co.,* 58 Minn. 8, 59 N. W. 633. Appellee's intestate is shown to have been rightfully upon appellant's track at the time of the accident, engaged as its servant at his post of duty, and he had the right to assume that appellant, in the movement of its trains, would be controlled by the requirements of the ordinance in controversy. The mere fact that he was upon the track in the discharge of his duty, and may have failed to look and listen for approaching trains, did not, under the law, constitute negligence *per se.* Such omission may or may not be negligence under the particular circumstances of a case, but of this fact the jury must be the judge. While the evidence may be said to be weak in some respects, and in others conflicting, still it sufficiently sustains the material facts averred in the complaint. There is evidence and circumstances which warranted the jury in finding that appellant did not observe or obey the ordinance in the movement of its trains, to which the fatal accident was due, and also evidence to justify the jury in finding that appellee's decedent was not guilty of contributory negligence. The contention of counsel that the deceased servant must be deemed to have assumed the risk or hazard which might result from a non-observance of the ordinance by appellant can not be sustained. Obedience to the requirements of the ordinance was a duty enjoined upon the railroad company, and it can not be successfully claimed that a violation thereof, so far as appellee's decedent was concerned, was an assumed risk upon his part.

Appellant lastly complains of the court's rulings in giving and in refusing certain instructions. Some of those refused are to the effect that if the persons in charge of the engine or train, from the alleged negligent running or pushing of which the injury resulted, were at the time fellow servants

of the deceased, then and in that event appellant was not liable. These instructions were all properly refused. The case, under the facts, comes clearly within the provisions of cl. four of §7083 Burns 1894, previously referred to and set out in this opinion. By the positive provisions of said fourth clause, where the injury of the servant of a railroad company is due to the negligence of any person or persons in the service of such company and at the time in charge of any locomotive engine or train upon the company's railway, the latter is liable in damages, unless excused by the negligence of the injured party, notwithstanding the fact that the person in charge of the engine or train may be a fellow servant of the party injured. *Pittsburgh, etc., R. Co.* v. *Moore,* 152 Ind. 345.

What we have said herein in regard to the validity of the ordinance and its application to the switch yard of appellant fully meets the objections urged by its counsel in relation to certain other instructions given and refused by the court. When the instructions are considered as an entirety they may be said to have been quite favorable to appellant, and the latter has no reason for demanding a reversal for the giving or refusing of instructions. Finding no reversible error, the judgment is affirmed.