PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY v. LIGHTHEISER.

[No. 20,218. Filed June 2, 1904. Rehearing denied June 30, 1904.]

MASTER AND SERVANT.—*Negligence.*—*Complaint for Personal Injuries.*—*Conclusion.*—*Demurrer.*—Where a complaint charges that the plaintiff, "as was his duty under his employment," took a certain position between the tracks of a railroad company, and while occupying such position, "as was his duty to do under his employment," he was run over by a car, it fails to state a cause of action, since the acts must be charged from which a duty may be inferred. Charging that it was the duty of the defendant to do or not to do a certain thing is a mere conclusion of law. *pp. 251, 252.*

SAME.—*Common Law Liability.*—*Fellow Servant.*—Where a complaint is drawn upon the theory of a common law liability, it must show affirmatively that the servant whose negligent act caused such injury was not

163 247
e163 571
163 574
163 621
163 247
164 150
164 312
164 481
164 492
164 546
163 247
165 540
165 541
f165 542
163 247
166 460
d168 270
s168 443
s168 446
s168 453
s168 458

163 247
169 335
169 676
169 678
f169 688
170 88
170 285
170 378
170 547

Pittsburgh, etc., R. Co. *v.* Lightheiser.

a fellow servant, and that the duty broken was owing by the master. *p. 253.*

RAILROADS.—*Backing Cars.—Failure to Provide Air Brakes.—Pleading.*— Where negligence is predicated upon backing cars and failure to provide air-brakes, facts must be alleged showing that it was dangerous so to move cars and also that it was practicable to operate the air-brakes in the manner suggested. *pp. 253, 254.*

PLEADING.—*Conclusion of Law.*—To allege in a complaint for personal injuries for negligence of defendant, that it was plaintiff's duty to be at a certain point, is insufficient. The facts requiring him to be there should be stated, whether by rule of the company, by contract, or custom. *p. 254.*

RAILROADS. — *Violation of Municipal Ordinance.* — Ordinances regulating the movement of trains are in the exercise of the police power and have the force of a local law, the violation of which is negligence *per se* and not simply evidence of negligence. *p. 256.*

SAME.—*Rules of Company.— Violation of.*—The violation of the rules of a railway company in the operation of its trains does not constitute negligence *per se*, but it must also be shown that such injured employe relied upon the observance of such rule by such company. *p. 257.*

PLEADING.—*Complaint.—Allegation of Due Care.—Employers' Liability Act.*— A complaint under section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901) is not bad for failure to allege that the plaintiff when injured was "in the exercise of due care and diligence," as provided in said statute, since by statute (Acts 1899, p. 58, §359a Burns 1901), it is provided that "it shall not be necessary for the plaintiff in such action to allege or prove the want of contributory negligence," though "due care" is still an element in the case. *pp. 257–259.*

STATUTORY CONSTRUCTION.— *Contributory Negligence.*—Section one of the act of 1899 (Acts 1899, p. 58, §359a Burns 1901), purporting to cover "all" cases of personal injury, includes actions brought under section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901), since "all" includes every kind of action, there being nothing in the statute to show a different meaning. *p. 259.*

STATUTES.—*Repeal by Implication.*—Repeals by implication are not favored, but the presumption that a former statute is not repealed by a later one covering the same matter is a slight one, where the subsequent act on its face purports to change some prior law, and where the fault sought to be corrected inheres in the prior statute, it will be repealed, the words of the subsequent statute covering all, and the statute being remedial. *p. 260.*

CONSTITUTIONAL LAW.—*Amendment of Statute.*—The act of 1899 (Acts 1899, p. 58, §359a Burns 1901) is an independent act and does not purport to be an amendment, and is therefore not in violation of article 4, §21, of the Constitution of Indiana. *p. 261.*

NEGLIGENCE.—*Fellow Servant.—Ordinance.*— Where the complaint shows that an injury was caused by the negligence of a fellow servant, under

Pittsburgh, etc., R. Co. *v.* Lightheiser.

the employers' liability act (§7083 Burns 1901), it is not necessary also to show that if a city ordinance had been complied with, such injury would not have happened. *p. 262.*

CONSTITUTIONAL LAW.—*Impairment of Contract.*—*Employers' Liability Act.*— The constitutional validity of the employers' liability act (Acts 1893, p. 294, §7083 *et seq.* Burns 1901) is not overthrown by a complaint charging that the plaintiff had been in the employ of the master for twenty-seven years, no definite contract being shown. *p. 262.*

TRIAL.—*Instructions.*—*Burden of Proof of Contributory Negligence.*—An instruction leaving the jury with the impression that the defendant must prove contributory negligence by his own proof, is erroneous, since such fact may be shown by plaintiff's witnesses as well as by defendant's. *pp. 262, 263.*

From Cass Circuit Court; *T. F. Palmer,* Special Judge.

Action by George W. Lightheiser against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company. From a judgment on a verdict in favor of plaintiff for $6,500, the defendant appeals. *Reversed.*

*G. E. Ross,* for appellant.

*Frederick Landis, S. T. McConnell, A. G. Jenkines, B. C. Jenkines* and *C. H. Stuart,* for appellee.

GILLETT, J.—Appellee instituted this action against appellant to recover for an injury to his person. His complaint was in four paragraphs, to each of which appellant unsuccessfully demurred. Issues of fact were joined, and there was a verdict and judgment for appellee.

The errors assigned bring in question the rulings on demurrer above mentioned, the overruling of a motion made by appellant for judgment in its favor on the answers returned by the jury to interrogatories, and the overruling of appellant's motion for a new trial.

According to all of the paragraphs of complaint, appellee, who was an employe of appellant as a locomotive engineer, received his injury in the city of Logansport, during the night-time, by being knocked down and run over by a mail-car belonging to appellant, which was being run backwards in appellant's yards. It is averred in said para-

graphs that appellee had been ordered to make a trip upon appellant's road; "that, in obedience to said order, plaintiff, as was his duty under his employment, took his position at a point between the track on which his locomotive was standing and the track on which said mail-car was approaching, for the purpose of examining, accepting, and assuming control of said locomotive, when said locomotive began to move; and that said locomotive and the mail-car passed him at the same time, leaving a space of but four feet between the locomotive and car where he might stand. It is further alleged that while appellee was occupying this position, "as was his duty to do under his employment," he was knocked down and run over by said mail-car.

The first paragraph of complaint charges that "it was the duty" of appellant to provide said car with a person stationed on the forward end thereof, as it was being moved, supplied with a proper signal light, to warn appellee and other persons using the grounds between and adjacent to appellant's tracks, and also to provide said car with an air-brake attachment, so that said car could be stopped by a brakeman upon the discovery of anyone in imminent peril of life or limb from being run over by said car. It is alleged that appellant negligently and carelessly omitted to take such precautions, and that appellee was run upon and injured by reason of the negligent movement as aforesaid.

The second paragraph of the complaint counts on the negligence of the engineer in control of the locomotive which was moving said mail-car. He is charged with negligently moving said car backwards without having a person stationed on the end thereof, so as to perceive the first sign of danger, and to signal the engineer, as required by a rule of appellant. Said engineer is also charged in said paragraph with negligence in moving said car in violation of certain ordinances of the city of Logansport. It is also

alleged that appellee was run over by said car as a result of the negligence pleaded.

In appellee's third paragraph of complaint it is alleged that "it was the duty" of appellant's yard conductor, who had charge of said car and the locomotive attached, to take the particular precautions which we have mentioned in connection with our statement as to the first paragraph of complaint. It is further alleged that such yard conductor negligently and carelessly omitted to take such precautions, and that by reason thereof appellee was run upon and injured by said car.

The fourth paragraph of complaint, like the first and third, contains a direct charge as to appellant's duty to take certain precautions; and it is further alleged that appellant employed an incompetent and inexperienced brakeman or flagman upon said car, knowing him to be incompetent and inexperienced, and that the latter omitted to take the precautions which it is alleged it was appellant's duty to take in connection with the movement of said car, and that as a result appellee was run over.

Each of said paragraphs is quite long, and it is but just to appellee's counsel to state that there has been no attempt upon our part to exhibit all of the details of said paragraphs. It has only been our endeavor to make such a statement concerning them as would furnish a basis for this opinion.

The first paragraph of complaint is insufficient. It is well settled that a complaint for negligence must disclose by proper averments the existence of a duty upon the part of the defendant, or of the person alleged to be negligent, where it is a case of imputed negligence, as, under an employers' liability act, to exercise care toward the person injured. *Muncie Pulp Co.* v. *Davis* (1904), 162 Ind. 558; *American Rolling Mill Co.* v. *Hullinger* (1904), 161 Ind. 673; *Farris* v. *Hoberg* (1892), 134 Ind. 269, 39 Am. St.

261; *Louisville, etc., R. Co.* v. *Sandford* (1888), 117 Ind. 265; *Zimmerman* v. *Baur* (1894), 11 Ind. App. 607. The direct statement that it was the duty of a defendant to do or not to do a certain act is a mere conclusion of law. The rule is that facts must be alleged from which the law will imply the existence of the underlying duty. *Indianapolis, etc., Transit Co.* v. *Foreman* (1904), 162 Ind. 85, and cases cited; *Seymour* v. *Maddox* (1851), 16 Q. B. 326; *Brown* v. *Mallett* (1848), 5 C. B. 599, 57 Eng. C. L. 598; *City of Buffalo* v. *Holloway* (1852), 7 N. Y. 493, 57 Am. Dec. 550; *West Chicago St. R. Co.* v. *Coit* (1893), 50 Ill. App. 640. And see *Hopper* v. *Covington* (1886), 118 U. S. 148, 6 Sup. Ct. 1025, 30 L. Ed. 190.

In *Brown* v. *Mallett, supra,* the declaration charged that "thereupon it became the duty of the defendant" to do certain things. Of this Maule, J., said: "But the allegation now in question is open to the further objection, that, however directly averred, it is an averment of matter of law only, and not of matter of fact. If the words had been, that the defendant became bound by law to do certain acts, it could not be questioned that that was an allegation of matter of law; and the words 'it became the duty of the defendant,' if they were to be understood as averring the existence of some duty different from that arising out of a legal obligation, certainly would not aid the declaration, inasmuch as the breach of such a duty does not give a cause of action. But, if they be understood, as we think they are, as averring the existence of a legal liability, it is well established that such an averment, being an averment of matter of law, will not supply the want of those allegations of matter of fact from which the court could infer the law to be as stated; so that such allegation is useless where the declaration is insufficient, and superfluous when sufficient without it."

*Seymour* v. *Maddox, supra,* was a master and servant case, where there was an express allegation of duty. In

holding that the judgment must be arrested, Lord Campbell said: "The duty, a breach of which is laid, does not arise from the particular facts stated in the declaration nor from the general relation of master and servant. What, then, is the effect of the positive allegation of such duty? I confess that I, at first, thought that where a relation, from which a particular duty may arise, is alleged, and the particular duty is also alleged, it might be shown in evidence that, in fact, such a duty did arise, and that it was unnecessary to set forth the facts themselves which raise the duty. But the decisions show that the allegation of duty is in all cases immaterial, and ought never to be introduced; for, if the particular facts raise the duty, the allegation is unnecessary, and if they do not, it will be unavailing. In this case there is an allegation that it was the defendant's duty to light the floor and fence the hole, but no facts are stated from which the duty arises. The express allegation, therefore, will not help the defect, and the declaration is bad."

Returning to the paragraph of complaint under consideration, it is first to be observed, since the paragraph is drawn on the theory of a common law liability, that, for aught that is pleaded, the person who caused said car to be moved without having a brakeman or lookout upon it was himself a fellow servant of appellee, for whose acts or omissions appellant was not liable. *Southern Ind. R. Co.* v. *Martin* (1903), 160 Ind. 280. It devolved upon appellee to show, by proper allegations of fact, that it was a duty which belonged to the master that had been neglected. *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 63 L. R. A. 460. As was pointed out in the case last cited, the duty of the master with respect to providing a proper place to work does not require that the master should at all times keep the place safe as against transient perils occasioned by the negligence of other servants who are engaged in executing the details of the work. There is enough to sug-

gest in said first paragraph that possibly appellant was delinquent in the matter of omitting to furnish proper appliances, but there is not sufficient alleged in such particular. The allegations of the paragraph do not aid us in determining whether a duty existed. There is nothing in the pleading to advise us that it was dangerous to move a car backwards in the yard at that particular time, without taking the precautions alleged to have been omitted. Facts are not disclosed from which it can be said that it was the duty of appellant so far to apprehend the happening of such an occurrence as to create a duty upon its part to furnish special appliances to guard against such consequences; and as respects the air-brake attachment, it is not alleged that such appliance is one which it is practicable to operate in the manner suggested.

In indicating that the facts disclosed do not show the existence of a duty, we are not unmindful of what is alleged as to where it was the duty of appellee to be under his contract. There are instances where the word "duty" may be used in a pleading, although perhaps not with the utmost propriety, in characterizing the nature of the plaintiff's employment, as where the word is used as descriptive of an ultimate fact as to the character of the work which he was required to do, as that one of the duties which plaintiff was employed to perform was to inspect his locomotive. In such an instance, the allegation is one of ultimate fact, and is partially descriptive of what his contract was. But here it is sought to be shown that appellee was properly in a particular place, and he charges that it was his duty to be there under his contract of employment, thus attempting to characterize the contract without showing what the contract was. If a rule of the company required him to be at that particular point, the existence of the rule should have been pleaded, or, if it was necessary for him to be there in order to execute one of the details of his work, that should be alleged, or, whatever the

fact might be which justified his presence at that point, it should be made to appear by an appropriate averment of fact. The attempted showing in the latter part of said paragraph as to what was the duty of appellant being insufficient, the whole burden of manifesting the existence of such duty is thrown upon the allegation that appellee took a position as it was his duty to do under his contract. The sufficiency of such allegation must be judged by the purpose that it must serve, if the paragraph is to be held good, namely, to manifest that there was a duty owing to appellee. According to allegation, he received an order to take his locomotive upon a trip. Now, if this order, from the nature of the contract of employment, implied that he must go to, and remain at, the place where he was injured, then there was a particular duty owing appellee, as contradistinguished from a general duty which might be shown to exist toward all employes working in the yards. To manifest this particular duty, appellee attempts to construe his contract, and this effort we must characterize, having in mind the purpose that it was designed to serve, as a mere conclusion. The pleader might as well have alleged that the giving of the order to take his locomotive out upon the road implied, by virtue of his general contract of employment, that he was to assume a certain position until the time came to go upon such locomotive.

In *Jeffersonville, etc., R. Co.* v. *Dunlap* (1868), 29 Ind. 426, this court, in speaking of some of the cases above cited, said: "The *gravamen* in each of those cases was, that by virtue of a contract it became the duty of the defendant to do certain things which he neglected to do, whereby the plaintiff was damaged. It did not appear, from the facts stated, that the duty was imposed, and it was merely held that the averment that the duty existed was alleging a conclusion of law, and not of fact. This was in accordance with a rule of pleading long and well settled."

Speaking generally of the first paragraph of the com-

plaint, it may be said that in a pleading facts must be directly and positively alleged, and it is not permissible to indulge in inferences in support of the pleading, although it might be entirely legitimate to draw such inferences had the question arisen as to the effect of evidence. *American Rolling Mill Co.* v. *Hullinger* (1904), 161 Ind. 673.

The objections pointed out to the first paragraph of complaint also condemn the third and fourth paragraphs.

The second paragraph of complaint is evidently founded upon the employers' liability act (Acts 1893, p. 294, §7083 *et seq.* Burns 1901). Ordinances like those pleaded in said paragraph are ordained under the police power for the protection of the public. *Pittsburgh, etc., R. Co.* v. *Moore* (1899), 152 Ind. 345, 44 L. R. A. 638; *Baltimore, etc., R. Co.* v. *Peterson* (1901), 156 Ind. 364. Ordinances relative to the movement of locomotives and cars create duties, and their violation, in case of a person having a right to complain thereof, following as a proximate result of such violation, is properly characterized as negligence *per se*. *Pennsylvania Co.* v. *Horton* (1892), 132 Ind. 189; *Pennsylvania Co.* v. *Hensil* (1880), 70 Ind. 569, 36 Am. Rep. 188; *Pennsylvania Co.* v. *Stegemeier* (1888), 118 Ind. 305, 10 Am. St. 136; Thompson, Negligence (2d ed.), §§10-12. See, also, *Chicago, etc., R. Co.* v. *Boggs* (1884), 101 Ind. 522, 51 Am. Rep. 761; *Indiana, etc., R. Co.* v. *Barnhart* (1888), 115 Ind. 399; *Baltimore, etc., R. Co.* v. *Walborn* (1890), 127 Ind. 142; *Baltimore, etc., R. Co.* v. *Peterson, supra*. "An ordinance of a municipal corporation is a local law, and binds persons within the jurisdiction of the corporation." *Pennsylvania Co.* v. *Stegemeier, supra;* *Baltimore, etc., R. Co.* v. *Peterson, supra*. The violation of such an ordinance as either of these which is pleaded is a violation of law, and in such a case the law attaches its own consequences, and does not vest a dispensing power in the jury to set aside the law, as would be the case if the viola-

tion of the ordinance were treated as mere evidence of negligence. See Thompson, Negligence (2d ed.), §11.

As respects the charge in said paragraph that the engineer who was engaged in moving said mail-car violated a rule of the company, it will be observed that the sufficiency of said paragraph does not depend upon such allegation, as a violation of duty is otherwise shown. We may say, however, that the pleading of facts showing that a rule had been violated does not in and of itself constitute a sufficient showing of a duty neglected. The existence of a rule might be a factor in some cases in the making of such a showing, as in instances where the person who committed the alleged negligent act or omission had reason to apprehend that the person who was afterwards injured would be thrown off his guard by the assumption that the rule would be observed. We indulge in this observation that the case may not be presented to the jury on the second trial on the theory that evidence of the violation of a rule necessarily shows a duty neglected.

It is next objected that said paragraph is insufficient because it fails to aver that appellee was "in the exercise of due care and diligence," as required by §7083, *supra*. Appellee's counsel seek to meet this objection by calling attention to the provisions of section one of the act of February 17, 1899 (Acts 1899, p. 58, §359a Burns 1901). Omitting the enacting clause, that section is as follows: "That hereafter in all actions for damages brought on account of the alleged negligence of any person, copartnership or corporation for causing personal injuries, or the death of any person, it shall not be necessary for the plaintiff in such action to allege or prove the want of contributory negligence on the part of the plaintiff, or on the part of the person for whose injury or death the action may be brought. Contributory negligence, on the part of the plaintiff, or such other person, shall be a matter of de-

fense, and such defense may be proved under the answer of general denial: Provided, that this act shall not affect pending litigation."

It does not admit of doubt that, if a cause of action is founded upon a statute, the plaintiff is not at liberty to subtract from the terms upon which the right has been accorded. *American Rolling Mill Co.* v. *Hullinger, supra,* and cases there cited; *Indianapolis, etc., Transit Co.* v. *Foreman* (1904), 162 Ind. 85. It is clear that prior to the enactment of the act of 1899 it was essential that a person bringing an action under the employers' liability act should allege, either directly or in substance, that he was in the exercise of due care and diligence. Giving to the act of 1899 its broadest import, we must yet affirm that the statutory requirement of due care and diligence upon the part of the plaintiff is still an element in the cause of action under the act of 1893, but it is evident that we may accord to the last-mentioned act the full measure of its fundamental purpose, as an enactment increasing the responsibilities of the master, and yet hold that as a matter of pleading the plaintiff may have the benefit of the subsequent statute. The act of 1899, according to its title, purports to be "an act concerning the pleading and proof" in a certain class of cases, and if the grounds of action mentioned in the act of 1893 can be said to be a sub-class of the general class, with which the later enactment deals, then the relation of the two statutes is as hand in glove.

Does the statute of 1899 refer in part to the pleading and proof in actions given by the statute of 1893 for negligence causing injury to the person or death, or does such subsequent enactment refer only to a class of actions which might have been maintained prior to 1893? The condition of the employers' liability act, that the plaintiff shall be in the exercise of due care and diligence, is tantamount to a requirement that he shall not be guilty of contributory negligence. *Indianapolis Union R. Co.* v. *Houlihan* (1901),

157 Ind. 494, 498, 54 L. R. A. 787.   And see *Baltimore, etc., R. Co.* v. *Little* (1897), 149 Ind. 167; *Pittsburgh, etc., R. Co.* v. *Montgomery* (1898), 152 Ind. 1, 71 Am. St. 300; *Baltimore, etc., R. Co.* v. *Peterson* (1901), 156 Ind. 364. It will be observed that the statute of 1899 undertakes to regulate the pleading and proof "in all actions for damages brought on account of the alleged negligence of any person, copartnership, or corporation for causing personal injuries or the death of any person." The word "all," as an adjective of number, means the whole number of; every one of. Encyclopædic Dict.

In considering whether the statute of Merton, in which the words *omnes viduae* were used, applied to each of the five kinds of dower, Lord Coke observed: *"Qui omne dicit, nihil excludit"*—who says all does exclude nothing. Coke's Inst. (second part), 81.   We would not be understood, however, as asserting that the word, as used in legislation, is always to be understood as an all inclusive one.   As so used, it is a general term, which is to be understood as comprehending whatever is within the outmost circle of the meaning of the word, unless, after subjecting the statute to interpretation and construction, there is sufficient reason for holding that the term was not used in so broad a sense.   *Harrington* v. *Smith* (1871), 28 Wis. 43; *Torrance* v. *McDougald* (1853), 12 Ga. 526; *Phillips* v. *State, ex rel.* (1854), 15 Ga. 518; *Kieffer* v. *Ehler* (1852), 18 Pa. St. 388; *Stone* v. *Elliott* (1860), 11 Ohio St. 252; *New Bedford R. Co.* v. *Old Colony R. Co.* (1876), 120 Mass. 397.   As indicated, there must be a reason which warrants the court in concluding that the word was not used according to its primary meaning to justify a holding that it was used in a more restricted way, for courts can not create exceptions in the operation of statutes, but at the most can only recognize such exceptions as the legislature has created.   *President, etc.,* v. *Dalton* (1850), 9 How. 522, 13 L. Ed. 242; *Bradley* v. *Buffalo,*

*etc., R. Co.* (1866), 34 N. Y. 427; *Tracy* v. *Troy, etc., R. Co.* (1868), 38 N. Y. 433, 98 Am. Dec. 54; *Greeley* v. *St. Paul, etc., R. Co.* (1885), 33 Minn. 136, 22 N. W. 179, 53 Am. Rep. 16.

In *Indianapolis St. R. Co.* v. *Robinson* (1901), 157 Ind. 232, where it was claimed that the act of 1899 was unconstitutional, as containing too narrow a classification, this court said: "The act of February 17, 1899, includes within its scope all persons, natural and artificial, against whom actions for damages may be brought on account of alleged negligence causing personal injury or the death of any person. It applies to all actions of this kind, in all the courts of the State."

It is urged by appellant's counsel that repeals by implication are not favored. They are not so far in disfavor, however, as to authorize us to hold that where the legislature has enacted a law which purports to apply to all cases of a certain character it did not mean what its words imply. The presumption against an intent to repeal by implication is very slight in a case where the subsequent act on its face purports to change some prior law, and if in the subsequent law it is declared that "in all actions" of a certain character a rule of pleading and of the development of the proof have been changed, we should require some more substantial reason than the one suggested for holding that such enactment did not apply to all actions falling within the class as described. It was declared by Lord Coke, that if cases "be in like reason, they are in the like law." Coke, Lit., 191a. So, looking to the question as to what ought to be the rule of pleading and of the development of evidence in respect to contributory negligence in personal injury cases, we are led to inquire as to whether any reason can be assigned as having moved the legislature to distinguish in respect to such matters between common law and statutory actions. We apprehend that a reason can not be suggested. As to both classes of actions the

effect of the act of 1899, if applicable, is to relieve the plaintiff from the illogical situation of being called on to prove a negative, and to give to him the benefit of that presumption of right conduct which the law prefers to indulge concerning the acts of men.

The above consideration as to the nature of the later enactment leads to the proposition that it is remedial in its character, and as such is entitled to a liberal construction. Upon this point the case of *Andrew* v. *Deshler* (1881), 43 N. J. L. 16, is quite applicable. It appears that a statute had been enacted in New Jersey which permitted the plaintiff "in all actions of libel and slander" to aver that the words complained of were used in a defamatory sense, without resorting to innuendoes, etc. The court in the above case held that the enactment applied not only to slander of person, but also to slander of title, as the latter species of action was "not only within the words of the act, but also within the mischief to be remedied."

In the application of the doctrine that remedial statutes are to be liberally construed, there is ordinarily a reaching out upon the part of the court for a meaning that lies in some degree beyond the words, but in circumstances such as now confront us, where the statute is not only remedial, but the case is wholly within the words of the enactment, and within its reason as well, we are at a loss to understand what sufficient ground can be assigned for refusing to accept the natural import of the legislative words as the efficient sign of its purpose.

Appellant's counsel, while recognizing the power of the legislature to repeal a statute by implication, insists that if the act of 1899 is given the meaning that we have indicated should be attached to it, the act becomes amendatory, and that an act can not be made so to operate without complying with §21 of article 4 of the state Constitution. The section referred to has no application to an independent enactment. *State* v. *Gerhardt* (1896), 145 Ind. 439, 33 L. R. A. 313.

Said second paragraph of complaint, after alleging the negligent doing of certain acts relative to the movement of said mail-car, which it appears were in violation of said ordinances, and alleging the fact that appellee was injured by being run over while said mail-car was being so operated, charges that his injury was caused solely by the negligence of said engineer as in said paragraph averred. In view of this we think that it was unnecessary to show by allegation that if the requirements of said ordinances had been observed appellee would not have been injured. There is also sufficient alleged in said paragraph to show that appellee had not assumed the risk. *Baltimore, etc., R. Co.* v. *Peterson* (1901), 156 Ind. 364.

Appellant's counsel makes the further objection to said pleading that, as it appears therefrom that appellee had been continuously in the employ of appellant as a locomotive engineer for twenty-seven years, the employers' liability act is unconstitutional as applied to such a case, as amounting to an attempt to impair the obligation of a contract. It is enough to dispose of this objection to state that it does not appear that at the time said act went into force there was any such definitive agreement between the parties for the future as would warrant the assertion that any contract right of appellant had been impaired. We hold that the second paragraph of complaint is sufficient. Appellant was not entitled to judgment in its favor on the jury's answers to interrogatories.

In concluding this opinion we may properly observe that the instruction of the court on the subject of the burden of proof, as respects contributory negligence, was calculated to mislead the jury. The court instructed upon that subject as follows: "Contributory negligence is a matter of defense, and such defense may be proved under the general denial. This being the law of the State, it was not necessary for the plaintiff, George W. Lightheiser, to have offered any evidence whatever in chief bearing upon the

question as to his negligence, he only being required to introduce evidence upon that proposition after some proof has been introduced, after which it was his right to offer evidence upon that proposition." This instruction does not indicate who is to offer the proof which is to raise the question of contributory negligence, but the general framework of the instruction was calculated to lead the jury to infer that it was only by affirmative evidence offered by the appellant that this question could be raised. The jury was first informed that contributory negligence was a matter of defense, and this was assigned as a reason why it was not necessary for appellee to have offered any evidence upon the subject in chief. The instruction then proceeds to state that plaintiff is only "required to introduce evidence upon that proposition after some proof" has been offered upon the subject (inferentially by appellant, since it took up the introduction of evidence after the appellee closed his case in chief and as its evidence preceded the rebuttal), "after which it is his [plaintiff's] right to offer evidence upon that proposition." The jurors who had observed the development of the evidence in the case,— how at different stages one side and then the other assumed the duty of putting in evidence, could have scarcely failed to understand from the above instruction that the plaintiff was under no obligation to meet the question of contributory negligence except upon rebuttal, and that only to the extent that the affirmative evidence of the defense upon its case in chief had drawn such matter into question. The testimony of appellee upon the opening of the evidence had in reality presented the question as to his contributory negligence, and appellant was entitled to have that question as thus presented considered. *Indianapolis St. R. Co. v. Taylor* (1902), 158 Ind. 274.

Judgment reversed, with a direction to sustain appellant's demurrers to the first, third, and fourth paragraphs of complaint.

## On Petition for Rehearing.

GILLETT, J.—A petition for a rehearing and a brief in support thereof have been filed by counsel for appellee. As the third and fourth paragraphs of the complaint were, without elaboration, held insufficient, on a ground which was fully discussed by us in holding that the first paragraph of the complaint did not state a cause of action, it has resulted that it is the portion of our opinion last mentioned to which counsel for appellee direct their argument, in so far as they discuss the question as to whether we erred in holding said paragraphs insufficient.

Reduced to its last analysis, the contention that the paragraphs mentioned stated a cause of action rests upon the claim that, if there is a general charge of negligence against a defendant, it is unnecessary to aver facts which disclose that a duty was owing by the defendant to exercise care for the safety of the person injured. While there are many cases in which assertions have been made that it is competent to characterize an act or omission as having been negligently done or omitted, yet we apprehend that no negligence case can be found in which it has been directly ruled that it is unnecessary to aver facts by which the legal duty to use care is made to appear. Sometimes this element appears as an incident of the pleading of other facts which it is necessary to allege in such a complaint, but, in cases like the one under consideration, where the allegation of the immediate facts does not lead to the deduction that a duty upon the part of the defendant to exercise care toward the plaintiff existed, the pleader must allege further facts whereby the existence of the duty is manifested. So far from the authorities supporting counsel in the position stated, we think that, without exception, they will be found to accord with the position of the court. See note to *King* v. *Oregon, etc., R. Co.* (1898), 6 Ida. 306, as reported in 59 L. R. A. 209, 214.

We make no question as to its being competent to charge in a common law action of negligence, at least as against a demurrer, that the negligence relied on was that of the defendant, although it was in point of fact that of a servant for whom the defendant, as master, was responsible. The suggestion in the principal opinion, which counsel for appellee regard as an intimation to the contrary, had entirely to do with the central proposition in the case as presented upon said paragraphs. It was intended to indicate that there must not only be a duty shown to exist toward the plaintiff, but also that it must be a duty owing by the defendant; that it will not suffice to show a state of facts which suggests merely that a co-servant may have owed a duty which he neglected.

The pleader located appellee at a certain point between the tracks of appellant at the time he was struck by the mail-car. None of said paragraphs showed that at that time appellant owed him a duty, general or particular, to exercise care for his safety, and for this reason we continue of the opinion that said paragraphs of complaint did not state a cause of action.

The instruction given by the lower court as to the effect of the statute of 1899 upon the issue as to contributory negligence was clearly improper. That instruction was not only vague, but it was calculated to mislead the jury. In all ordinary circumstances, the giving of such an instruction is a reversible error. 11 Ency. Pl. and Pr., 140; *Deilks v. State* (1894), 141 Ind. 23. The point is made for the first time on the petition for a rehearing that if said instruction is considered in connection with instruction No. 20, given by the trial court, it will appear that the jury could not have been misled. It is unnecessary, in view of the state of the pleadings, to determine whether the point mentioned has been waived by appellee, and, if not, whether his counsel are right in their contention. Sufficient has been said as to the vague and misleading char-

acter of the instruction in question to lead the court below wholly to avoid the objection upon a retrial.

The petition for a rehearing is overruled.